UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C.K.S.,

                    Petitioner,

        v.

JULIO HERNANDEZ, *et al.*,

                    Respondents.

CASE NO. 2:26-cv-01356-GJL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner C.K.S. is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, initiated this action under 28 U.S.C. § 2241, seeking immediate release from NWIPC. Dkts. 1, 16. Respondents include Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), U.S. Department of Homeland Security ("DHS"), Markwayne Mullin (DHS Secretary), Todd Blanche (Acting U.S. Attorney General), ICE, United States Department of Justice, and Executive Office for Immigration

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Review ("EOIR") (collectively "Respondents").[1] The Amended Petition, which is the operative pleading, has been fully briefed. Dkts. 16, 20, 21; *see also* Dkts. 24, 27 (supplemental briefing).

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **DENIES** the Amended Petition (Dkt. 16) and all requests for relief therein.

## I.   FACTUAL BACKGROUND

### A.   Immigration History and Removal Proceedings

Petitioner, who alleges statelessness, was born in Laos and entered the United States as a refugee on or about June 10, 1981. Dkt. 10 at 2; Dkt. 16 at 3; Dkt. 11-1. He adjusted to lawful permanent resident status on January 20, 1982. *Id.*

On March 28, 1996, Petitioner was convicted of first-degree murder, for which he was sentenced to twenty-five years to life imprisonment. *Id.* On July 30, 2020, after completing his state sentence, Petitioner was taken into immigration custody and served with a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.*

During removal proceedings, Petitioner declined to seek relief from removal, waived appeal, and was granted voluntary departure by an Immigration Judge ("IJ").[2] Dkt. 10 at 3; Dkt. 11-2. Under the terms of the IJ's order, Petitioner's failure to voluntarily depart within thirty days automatically converted the order into a final order of removal. *Id.* At that time, ERO assessed Petitioner's removal was not likely to occur in the reasonably foreseeable future and released Petitioner from immigration custody on an Order of Supervision ("OSUP") on February 25, 2021. Dkt. 10 at 3; Dkt. 16 at 4.

---

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 3.

[2] The Amended Petition alleges that Petitioner's applications for relief from removal were denied. See Dkt. 16 at 3–4. As this allegation is not supported by the factual record, the Court instead adopts the facts as reflected in the immigration court records submitted into evidence in this case. *See* Dkt. 11-2.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 2

**B.      Receipt of Laos Travel Documents and Re-Detention**

Almost five years later, on December 22, 2025, ERO submitted an internal request seeking approval to obtain travel documents for Petitioner's removal to Laos. Dkt. 10 at 3. On January 5, 2026, ERO determined there was a significant likelihood that Petitioner could be removed in the reasonably foreseeable future and terminated his OSUP. *Id.*; Dkt. 11-4; Dkt. 25 at 2. Two days later, on January 7, 2026, following internal approval of that request, ERO forwarded a request for travel documents to the Laos government. Dkt. 10 at 3; Dkt. 25 at 2. Laos issued travel documents for Petitioner's removal on February 2, 2026. Dkt. 10 at 3; Dkt. 11-3; Dkt. 25 at 2. ERO did not notify Petitioner at that time and, instead, determined that the notice of imminent removal and notice of release revocation would be served on Petitioner at his next check-in appointment with immigration officials. Dkt. 10 at 3; Dkt. 11-5.

Petitioner next reported for an appointment with immigration officials on April 14, 2026. Dkt. 10 at 3; Dkt. 16 at 4. At that appointment, ERO notified Petitioner that his removal was imminent, conducted an informal interview, served him with notices of his imminent removal and revocation of release, and took him back into immigration custody. Dkt. 10 at 3; Dkt. 11-5; Dkt. 16 at 4; Dkt. 25 at 2. Petitioner was thereafter transferred to the NWIPC pending removal. Dkt. 10 at 3; Dkt. 25 at 2. ERO scheduled Petitioner for removal on a commercial flight departing less than two weeks later on April 26, 2026. Dkt. 10 at 3; Dkt. 25 at 2.

**C.      Initiation of Federal Habeas Proceedings and Attempted Removal**

Petitioner commenced this habeas action on April 21, 2026. Dkt. 1. Pursuant to the Court's Scheduling Order, Dkt. 2, Respondents provided Petitioner's counsel advance notice of Petitioner's scheduled removal on or around 1:33 p.m. on April 23, 2026. Dkt. 10 at 4; Dkt. 25 at 2. After the 72-hour notice period expired, Petitioner was placed on the previously scheduled

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 3

commercial flight departing Seattle-Tacoma International Airport at approximately 5:45 p.m. on April 26, 2026. Dkt. 10 at 4; Dkt. 25 at 3. That same evening (but after Petitioner had already departed on his flight), Petitioner's counsel filed an emergency motion for a temporary restraining order ("TRO"). Dkt. 4. Shortly thereafter, the Court granted TRO, in part, to preserve the status quo, and Respondents returned Petitioner to the NWIPC on April 27, 2026. Dkt. 7; Dkt. 10 at 4; Dkt. 25 at 3.

**D.      Further Factual Developments**

The factual record for Petitioner's removal continued to develop during these proceedings. It is undisputed that the Laos travel document issued on February 2, 2026, only remained valid for ninety days and expired on April 30, 2026. Dkt. 14 at 3; Dkt. 25 at 3. Then, on June 2, 2026, Respondents submitted a new request for travel documents to the Laos government. Dkt. 26. Laos issued replacement travel documents on June 18, 2026, which are also valid for a period of ninety days. Dkt. 26-1.

Meanwhile, on June 9, 2026, Petitioner filed a motion to reopen his immigration proceedings together with a motion seeking a stay of removal with the immigration court. *See* Dkt. 28. The present record contains no indication that the motion to reopen has been granted or that any stay of removal has been entered.

## II.      PROCEDURAL BACKGROUND

On May 12, 2026, Petitioner filed an Amended Petition, alleging the manner in which he was re-detained violated due process. Dkt. 16. Respondents filed a Return to the Amended Petition on May 21, 2026, relying on evidence previously submitted in the record. Dkt. 20; Dkt. 10; Dkt. 11, 11-1 through 11-5. After obtaining an extension of the briefing schedule, Petitioner

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 4

timely filed a Traverse on May 28, 2026, also relying on evidence already in the record. Dkt. 21; Dkts. 14, 14-1 through 14-5 (as amended by Dkt. 23); Dkts. 15, Dkt. 15-1 through 15-3.

Upon review of the Parties' briefing, the Court noted that Petitioner raised, for the first time in his Traverse, a claim that his continued detention was unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 21. Rather than require Petitioner to further amend, the Court directed supplemental briefing on that claim. Dkt. 22. Respondents thereafter filed a Surreply and supporting evidence, including a notice advising the Court that replacement travel documents had been issued for Petitioner's removal and a copy of that travel document. Dkt. 24; Dkt. 25; Dkts. 26, 26-1. Petitioner filed a Response to the Surreply and supporting evidence. Dkt. 27; Dkt. 28.

Accordingly, the Amended Petition (Dkt. 16) is fully briefed and ready for consideration by the Court.

### III.    HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

//

//

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 5

## IV.    DISCUSSION

Petitioner asserts two claims for habeas relief in these proceedings. First, Petitioner alleges his re-detention without advance notice or an individualized bond hearing violated the Due Process Clause of the Fifth Amendment. Dkt. 16. Second, Petitioner alleges his removal is not likely to occur in the reasonably foreseeable future, making his continued detention indefinite and unlawful under *Zadvydas*. Dkt. 21.

Respondents argue habeas relief should be denied on both claims. First, Respondents argue that Petitioner received all process due with respect to his re-detention. Specifically, Respondents argue that Petitioner's release was revoked for imminent enforcement of his final removal order in accordance with 8 C.F.R. § 241.4(l)(2) and, upon revocation, Petitioner received notice of the reasons for his revocation, an initial informal interview, and opportunity to respond as required by 8 C.F.R. § 241.4(l)(1). Dkt. 20 at 6–9. Second, Respondents argue that Petitioner's continued detention remains lawful under *Zadvydas*, as valid travel documents enabling Petitioner's removal are in hand (and, if necessary, replacements are readily available). Dkt. 24; Dkt. 26.

The Court agrees with Respondents and finds that Petitioner is not entitled to habeas relief on either claim. However, as facts and circumstances may later develop that affect the likelihood of Petitioner's removal, Petitioner's indefinite detention claim is **DISMISSED without prejudice**.

### A.    Re-detention Claim

Petitioner first contends that the method by which he was re-detained violated his due process rights because he was not provided written advance notice or a meaningful individualized determination before a neutral decisionmaker. Dkt. 16. Respondents counter that

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 6

they provided all process due for Petitioner's re-detention given his imminent removal and their compliance with regulatory requirements. Dkt. 20.

1.    Applicable Law

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Here, the Court will address whether, under *Mathews*, Petitioner has been afforded due process in connection with his re-detention.

2.    Analysis

On the first *Mathews* factor, Petitioner's liberty interest in remaining free from physical confinement after years of release in the United States under an OREC is substantial. *See*

*Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). As such, the first factor weighs strongly in Petitioner's favor.

On the second *Mathews* factor, Petitioner urges that he should have been provided with written advanced notice and a hearing before a neutral decisionmaker about the reasons warranting his re-detention. There is substantial authority in this District finding that these additional procedural protections are valuable in instances where a noncitizen's release is revoked for reasons not previously tested through an adjudicatory process, such as an immigration official's unilateral determination that a noncitizen poses a risk of dangerousness or flight. *See, e.g. E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. 2025). However, the Court is not persuaded that such additional safeguards would reduce the risk of erroneous deprivation where, as here, Respondents revoked Petitioner's release *only after* securing the lawful authority and practical ability to enforce his final order of removal.

While Petitioner may wish to separately challenge the lawfulness of his removal order in reopened immigration proceedings, the *Mathews* analysis before the Court here "requires that Petitioner demonstrate flaws in the government's deportation procedures, rather than the substance of the IJ's removal order or the executive's decision to enforce it." *Saechao v. Scott*, No. 2:26-CV-00548-TMC, 2026 WL 626765, at *5 (W.D. Wash. Mar. 5, 2026). Petitioner does not dispute that Respondents provided him with regulatorily required process, served him with notice of his imminent removal, and granted him an informal interview. While those contemporaneous procedures may not be sufficient to safeguard against erroneous deprivation in all circumstances, Petitioner has failed to show that he faced an intolerable risk of erroneous deprivation of liberty under the circumstances presented here. Thus, the risk of erroneous

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 8

deprivation without providing additional process was low, and the second *Mathews* factor favors Respondents.

As for the third *Mathews* factor, there are strong governmental interests in the efficient administration of immigration laws, including those regarding detention of noncitizens. As this Court has previously recognized, the administrative burden associated with the additional procedures Petitioner requests are modest. *See Garane v. Noem*, No. 2:26-CV-00538-GJL, 2026 WL 746565, at *3 (W.D. Wash. Mar. 17, 2026) ("Custody hearings are already routine."). Even so, the countervailing government interests in this case were at their zenith. At the moment of re-detention, Respondents possessed both the lawful authority and practical ability to imminently remove Petitioner to Laos. *Saechao*, 2026 WL 626765, at *5. Thus, the third and final *Mathews* factor weighs strongly in favor of Respondents.

On balance, the *Mathews* factors reveal no procedural due process violation in this case. Despite Petitioner's significant liberty interest, the risk of erroneous deprivation was low in light of the regulatorily required process provided and the concrete arrangements made for his removal, which occurred prior to and continued directly following his re-detention. Further, while the administrative burden to provide advance notice and individualized hearing was slight, the government nevertheless retained a considerable interest in ensuring Petitioner's appearance to facilitate his imminent removal. Thus, while Respondents here provided "effectively no pre-detention process, the *Mathews* factors fall in their favor because they did not seek to detain Petitioner without a hearing *until they had made concrete arrangements for his removal*." *See, e.g.*, *Saechao*, 2026 WL 626765, at *6 (cleaned up) (emphasis added); *Thiravong v. Scott*, No. C26-1400-MLP, 2026 WL 1382356, at *3 (W.D. Wash. May 18, 2026) (collecting cases "where

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 9

courts in this district have rejected due process claims because the government had obtained a travel document prior to redetention").

Accordingly, the Court concludes Petitioner is not entitled to habeas relief on his re-detention claim.

**B.      Indefinite Detention Claim**

1.      Applicable Law

Petitioner also challenges the constitutionality of his continued detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ. The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] shall detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." *Id.* at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id.*

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 10

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.* The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered. *Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *3 (W.D. Wash. Dec. 16, 2025).

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Shirdoon v. Scott,* No. 2:26-cv-01150-GJL, 2026 WL 1265503, at *3 (W.D. Wash. May 8, 2026) (citing *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)). If the noncitizen provides good reason, the burden then shifts to the Government to show that removal remains likely within a reasonable timeframe. *Zadvydas*, 533 U.S. at 701. If the Government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

2.     <u>Analysis</u>

Here, it is undisputed that the aggregate length of Petitioner's post-removal order detention exceeds six months. Dkt. 21; Dkt. 24. Thus, the Court analyzes Petitioner's indefinite detention claim under the burden-shifting framework of *Zadvydas* wherein Petitioner bears the initial burden of providing good reason to believe there is no significant likelihood of his

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 11

removal in the reasonably foreseeable future. The Court finds that Petitioner has not satisfied his initial burden and, even if he did, Respondents have submitted sufficient evidence to rebut his showing and demonstrate that Petitioner's removal remains likely and foreseeable.

Petitioner principally relies on three circumstances to argue that his removal is no longer reasonably foreseeable: (1) he alleges he is stateless; (2) he represents that he has filed a motion to reopen his immigration proceedings together with a motion for a stay of removal; and (3) the travel documents issued at the time of his re-detention expired before his removal could be completed. Dkt. 21; Dkt. 27.

With respect to the motion to reopen, the present record reflects only that the immigration court received Petitioner's motion to reopen and accompanying motion for a stay of removal. *See* Dkt. 28. Petitioner has not demonstrated that his removal proceedings have been reopened and that any stay of removal has been entered. Accordingly, the mere filing of those motions does not establish that Petitioner's removal is no longer reasonably foreseeable. *C.f. Yang v. Scott*, No. 2:26-CV-00469-JNW, 2026 WL 632661, at *4 (W.D. Wash. Mar. 6, 2026) ("[T]he Immigration Court's February 25, 2026, stay of Yang's removal greatly diminishes the Government's interest in continued detention, as it is unclear when or whether removal will occur.").

Likewise, Petitioner's allegation that he is stateless does not materially advance his indefinite detention claim. Even assuming Petitioner's allegations regarding his nationality are true, the issue before this Court is whether Petitioner's removal is reasonably foreseeable such that his detention pending removal is not indefinite and unlawful. The Court is not presented with, and may not lawfully address, any challenge to the underlying validity of Petitioner's removal order. *See Nasrallah v. Barr*, 590 U.S. 573, 580–81 (2020).

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 12

As for the foreseeability of Petitioner's removal (which bears on the lawfulness of his continued detention), the record reflects that Laos has twice issued travel documents authorizing Petitioner's removal notwithstanding Petitioner's assertions regarding his nationality. Dkt. 11-3; Dkt. 26-1. Thus, Petitioner's allegations of statelessness do not, on this record, demonstrate that his removal is not significantly likely to occur in the reasonably foreseeable future.

Nor does expiration of his previous Laos travel documents demonstrate that Petitioner's removal is unlikely to occur in the reasonably foreseeable future, particularly in light of Respondents' subsequent ability to obtain replacement travel documents. *See* Dkt. 26-1. In both instances where travel documents were requested, Respondents obtained Laos travel documents within approximately one month of submitting the request. Dkts. 10 at 3, 11-3; Dkts. 26, 26-1. Accordingly, Respondents' demonstrated ability to promptly obtain valid replacements, provides little support for Petitioner's final assertion that his removal is no longer significantly likely because prior travel documents expired during the pendency of these habeas proceedings.

Even assuming these three circumstances collectively satisfy Petitioner's initial burden under *Zadvydas*, Respondents have amply rebutted any showing that Petitioner's removal is no longer significantly likely to occur within the reasonably foreseeable future.

In particular, Respondents have submitted individualized evidence demonstrating their concrete efforts towards effectuating Petitioner's removal to Laos. In late December 2025, ERO initiated the process by submitting an internal request for approval to obtain travel documents from Laos. Dkt. 10 at 3; 25 at 2. Upon receiving internal approval, ERO submitted a formal request for travel documents to the Laos government. Dkt. 10 at 3; Dkt. 11-4; 25 at 2. Laos issued travel documents on February 2, 2026. Dkt. 11-3. Respondents thereafter served those travel documents on Petitioner when he reported for his next check-in with immigration officials

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 13

on April 14, 2026, and scheduled Petitioner's removal on a commercial flight departing in less than two weeks. Dkt. 10 at 3; Dkt. 11-5; Dkt. 25 at 2.

As such, Respondents' efforts progressed well beyond mere anticipation of Petitioner's removal. Indeed, after providing Petitioner's counsel the advance notice required by this Court's scheduling order, Respondents placed Petitioner aboard the scheduled commercial flight intended for his removal. Dkt. 10 at 4; Dkt. 25 at 2–3. Following the Court's entry of a TRO preserving the status quo in this case, however, Respondents ceased removal and returned Petitioner to the NWIPC the following day. Dkt. 7; Dkt. 10 at 4; Dkt. 25 at 3. As the TRO prohibits Petitioner's removal for the duration of these proceedings, the initial Laos travel documents secured by Respondents lapsed on April 30, 2026, without execution of Petitioner's removal. Dkt. 14 at 3; Dkt. 25 at 3. In further demonstration of their diligence and imminence of Petitioner's removal, Respondents subsequently sought and obtained replacement travel documents from Laos. Dkts. 26, 26-1.

These facts distinguish this case from those in which the Government relies primarily upon speculative assertions that travel documents may issue and removal may occur at some future date. *Lam v. Blanche,* 2:26-CV-01838-GJL, 2026 WL 2071148, at *5 (W.D. Wash. July 17, 2026) (citing *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)). Here, Respondents secured travel documents authorizing Petitioner's removal, coordinated a commercial flight for his removal, and progressed to the point of placing Petitioner aboard an outbound flight before this Court entered a TRO preserving the status quo in this case. Following expiration of the original travel documents, Respondents again obtained replacement travel documents within a relatively short period. This individualized record demonstrates Respondents

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 14

possess both the practical ability and the present authorization necessary to effect Petitioner's removal.

Accordingly, the Court concludes that Respondents have rebutted any showing that Petitioner's removal is no longer reasonably foreseeable. Petitioner's continued detention therefore remains authorized under 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas*, and he is not entitled to habeas relief on his indefinite detention claim at this time.

## V.    CONCLUSION

For the above stated reasons, the Amended Petition (Dkt. 16) is **DENIED**. Petitioner's re-detention claim is **DISMISSED with prejudice** and his indefinite detention claim is **DISMISSED without prejudice**. The Court's prohibition on Petitioner being removed from either the United States or this jurisdiction (Dkt. 7) is **LIFTED** and any further request for relief in Petitioner's Emergency Motion for Temporary Restraining Order (Dkt. 4) is **DENIED as moot**.

Dated this 27th day of July, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 15